# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OSCAR STOKES, | ) |
| | ) |
| Plaintiff, | ) |
| | )   2:16-cv-00064-NBF |
| v. | ) |
| | )   District Judge Nora Barry Fischer |
| TROOPER ADAM JANOSKO; and | ) |
| TROOPER PATRICK BIDDLE, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

### I.     INTRODUCTION

The instant matter concerns Plaintiff Oscar Stokes's claims for assault, battery and excessive force under 42 U.S.C. § 1983 against Defendants, Trooper Adam Janosko and Trooper Patrick Biddle. (Docket Nos. 1, 23 (narrowing the claims)). Plaintiff retained Dr. Paul McCauley, Ph.D., FACFE as an expert witness to opine on police procedures and the use of force in this matter. (Docket No. 76-1). Presently before the Court is Defendants' Motion to Exclude Plaintiff's Expert (Docket No. 69), their Brief in support of same (Docket No. 70), and Plaintiff's brief in response to Defendants' Motion (Docket Nos. 73, 76). The parties did not request oral argument with regard to Defendants' Motion and the supplemental briefing. After careful consideration of the parties' positions, and for the following reasons, Defendants' Motion is DENIED.

### II.    BACKGROUND

This is a civil rights case arising from a traffic stop that escalated into a pursuit. (Docket No. 1, at 6). During the early morning hours of January 18, 2014, Troopers Janosko and Biddle were allegedly on routine patrol when they observed the Plaintiff fail to come to a complete stop

at a posted stop sign. (*Id.*). The Defendants initiated a traffic stop, and the vehicle did not initially stop for approximately two minutes. (*Id.*). The Plaintiff then temporarily came to a stop, at which point Trooper Janosko exited his police cruiser and approached Plaintiff's truck. (*Id.*). The truck began to move again and, after allegedly attempting to break the door window with his weapon mounted flashlight, Trooper Janosko opened the driver's side door of the truck, reached inside, grabbed the driver's arm to try to remove the Plaintiff from the truck, and ran alongside the truck on the slippery road surface. (*Id.*). Trooper Janosko eventually discharged his firearm and shot the Plaintiff twice. (*Id.*). Trooper Biddle, who had been sitting in the police cruiser during Trooper Janosko's interaction with the Plaintiff, exited the vehicle, approached the truck, and fired between three and six additional shots at the Plaintiff. (*Id.*). The Plaintiff then drove away and was later apprehended at the hospital. (Docket No. 70, at 2).

As a result of this incident, Plaintiff has brought claims for assault, battery, and excessive force under 42 U.S.C. § 1983 and has retained Dr. McCauley as an expert witness. Dr. McCauley prepared an expert report dated August 31, 2015, but has not been deposed or otherwise provided sworn testimony in this matter. (Docket Nos. 76, at 4, 76-1). Of note, the Plaintiff has made Dr. McCauley available for a deposition, but Defendants have not availed themselves of that opportunity and instead filed the instant *Daubert* challenge. (Docket No. 76).

### A. Dr. McCauley's Qualifications

As a former Pennsylvania municipal police officer and trainer, Dr. McCauley has extensive background and experience in general police training. (*Id.* at 1-2). For more than twenty-five years, Dr. McCauley has been a state certified police training instructor in Pennsylvania, Kentucky, and Florida. (*Id.*). He is a graduate of the British Home Office Police Detective Course and is a Professor Emeritus of Criminology and former Chairperson of the

Department of Criminology at the Indiana University of Pennsylvania. (*Id.*). In both his academic and police training duties, he has taught the policies and procedures of police operations and management and has developed police training policies and curricula for officers, supervisors and trainers. (*Id.* at 2).

Dr. McCauley has written or published more than 80 professional papers, books, chapters, and technical reports, many of which address issues concerning police administration, operations, and policies, and has been qualified as a police expert in state and federal courts in more than thirty states, including in this District. (*Id.*).

### B. Dr. McCauley's Opinions

Dr. McCauley's expert report offers opinions regarding the generally accepted police best practices for traffic stops and the use of force by police officers, and he specifically opines on the use of force by Troopers Janosko and Biddle against the Plaintiff in this case. (Docket No. 76-1). In forming these opinions, Dr. McCauley reviewed the Pennsylvania State Police Incident Report with two Supplemental Investigation reports, the Police Criminal Complaint, and the Dash Cam video. (*Id.* at 3).

As to the initial traffic stop, Dr. McCauley opines that the Troopers' failure to provide the reason for the pursuit of the Plaintiff when they radioed in the truck description prevented a supervisor from taking control of the pursuit and potentially terminating the same given the hazardous road conditions. (*Id.*). In addition, Dr. McCauley opines that the failure of the Troopers to use reasonable high-risk vehicle stop procedures and approach, under the circumstances presented here, "increased the likelihood the officers would create a situation creating an artificial split-second decision to use force." (*Id.*). Finally, he concludes that the police conduct here, namely reaching into an occupied vehicle when it is running, raises serious

3

questions of police street survival and tactical skills, training and supervision and is contrary to reasonable and accepted police practices. (*Id.* at 4-5).

As to the use of force, Dr. McCauley first writes in his report that Trooper Janosko's attempt at breaking the door window with his weapon mounted flashlight was against police best practices, which prohibit an officer from using his firearm as a club, hammer, or impact device. (*Id.*). Second, police best practices restrict the use of deadly force, and they instruct an officer threatened by an oncoming vehicle to move out of its path instead of discharging a firearm at it or any of its occupants. (*Id.* at 7). Yet, McCauley finds that:

> Clearly, Trp Janosko did not move out of the path of the moving truck but rather opened the driver's door while it was moving and grabbed the driver's arm. Trp Janosko recklessly created an extremely dangerous situation for himself by running on a slippery road surface while holding onto the arm of the driver of a moving truck. Considering the totality of the circumstances, including the road being snow/slush/ice covered and the conditions slippery, Trp Janosko created an unnecessary and unreasonable split-second use of deadly force situation.

(*Id.*).

As to Trooper Biddle, if Dr. McCauley considers only the moment Trooper Biddle fired at the fleeing truck driver, and accepts that Trooper Biddle had a clear field of fire and reasonably believed he was defending Trooper Janosko from serious injury or death, then Dr. McCauley opines that Trooper Biddle was justified in using deadly force. (*Id.*).

### III. DISCUSSION

#### A. Legal Standard

Federal Rule of Evidence 702, which memorializes the Supreme Court's landmark case, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic framework for the admissibility of expert testimony:

4

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The United States Court of Appeals for the Third Circuit has held that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Id*. In this role, the district court is not the finder of fact but must focus on the methodology of the expert in order to "satisfy itself that 'good grounds' exist for the expert's opinion." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (citing *Daubert*, 509 U.S. at 590); *In re TMI Litigation*, 193 F.3d 613, 713 (3d Cir. 1999) (district court should not conflate "its gatekeeping function with the fact-finders' function as the assessor of credibility"). "These gatekeeping requirements have been extended to apply to all expert testimony." *Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002).

"The District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53 (1999)). "In a case such as this, where an expert is proffered to testify regarding non-scientific matters, '[t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience' of the

witness and the methodology used will be applying that experience to the facts of the case." *Jackson v. City of Pittsburgh*, Civ. No. 07-111, 2010 WL 3222137, at *4 (W.D. Pa. Aug. 13, 2010) (quoting *Roberson v. City of Philadelphia*, Civ. No. 99-3574, 2001 WL 210294, at *5, n. 10 (E.D. Pa. Mar. 1, 2001)); *see also Voilas v. General Motors Corp.*, 73 F. Supp. 2d 452, 461 (D.N.J. 1999) (quoting *Kumho*, 526 U.S. at 150) ("[W]here applying the *Daubert* factors does not appear workable, the Court is guided by *Kumho*'s forewarning that in certain cases, the 'relevant reliability inquiry concerns may focus upon personal knowledge or experience.'").

With respect to the "fit" prong, the expert must "apply his expertise reliably to the facts; his opinions must be well reasoned, grounded in his experience, and not speculative." *Sargent v. Commonwealth of Pennsylvania*, Civ. No. 13-00730, 2015 WL 6447742, at *2 (M.D. Pa. Oct. 26, 2015) (quoting *Roberson*, 2001 WL 210294, at *4).

### B. Application to Dr. McCauley's Opinions

At the outset, the Court notes that the purpose of an expert report is to put the other side on notice about the scope of the expert's potential testimony. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012 WL 5451495, at *3 (W.D. Pa. Nov. 7, 2012) (citing *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak),* 619 F.3d 729 (7th Cir. 2010) ("The purpose of the [expert] report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response.")). At this point in the litigation, Dr. McCauley has not provided any sworn testimony and his opinions have not been subject to cross-examination. Yet, Defendants argue that Dr. McCauley's expert report and any potential testimony related to the same are inadmissible, as the opinions do not satisfy the reliability and fit requirements under *Daubert*.[1] (Docket No. 70, at 6-7).

---

[1] Defendants concede that Dr. McCauley is sufficiently qualified as an expert and the Court agrees. (Docket No. 70, at 6).

Having fully considered Dr. McCauley's expert report, the Court finds that Dr. McCauley's opinions are admissible as expert opinions under *Daubert*. Nevertheless, the Court is guided by its prior decision in *Jackson* and, if this expert is proffered to testify at trial, the Court will limit his testimony to the extent it approaches the ultimate legal issues in this case. 2010 WL 3222137, at *9.[2] The Court now turns to its analysis under Rule 702, starting with an evaluation of the expert's reliability.

### 1. *Reliability*

Defendants attack the reliability of Dr. McCauley's methodology, namely applying "generally accepted qualitative methodologies commonly used in the social sciences" including "comparative analysis, ethnography/description, content analysis, and case study in assessing compliance with and deviations from accepted police operation and managerial practices." (Docket No. 70, at 5-6). They contend that Dr. McCauley's "subjective unsupported opinions" follow a review of a few chosen pieces of information and are "riddled with impermissible legal conclusions that invade the province of the Court and usurp the role of the jury." (*Id.*).

In the context of expert testimony offered by a non-scientific expert, Dr. McCauley's reliance on certain relevant materials coupled with his "experience, specialized knowledge, education, training and professional qualifications in criminology, police organizations, operations, procedures, and training," is permissible. (Docket No. 76-1, at 3, 8); *see also Jackson*, 2010 WL 3222137, at *9; FED. R. EVID. 702, Advisory Comm. Notes, 2000 Amd. ("when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of

---

[2] While the Court finds that Dr. McCauley's expert report and potential testimony based on the same should not be excluded under the *Daubert* analysis, the scope of his expert testimony at trial, if so proffered, is more properly raised at the pretrial stage through *in limine* motions.

7

extensive experience to analyze the meaning of conversations."). As in other contexts, a witness may not testify as an expert outside the scope of his or her expertise. *See Jackson*, 2010 WL 3222137, at *9. But where the expert's testimony is based upon personal knowledge and experience, "the methodology used will be applying that experience to the facts of the case." *Id.* This is precisely what Dr. McCauley has done here, as his report clearly demonstrates his reliance on decades of experience as a law enforcement officer and trainer, as well as the dash cam video of the incident and the reports from the involved Troopers. (Docket No. 70-1, at 3-8).

### 2. Fit

Regarding the "fit" element of the analysis, the ultimate inquiry is whether the proffered testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. CIV. P. 702. In their motion, Defendants thoroughly dissect Dr. McCauley's report to the extent they feel the opinions provided therein will supplant the Judge in charging the jury. (Docket No. 76, at 8). In response, Plaintiff concedes that any references by Dr. McCauley to the "reasonableness" or "excessiveness" of the force used invades the province of the jury. (Docket No. 76, at 8). The Court agrees, and to the extent Dr. McCauley's potential testimony broaches on the ultimate legal issues in this case, the Court will limit his testimony. *See Patrick v. Moorman*, 536 Fed. Appx. 255, 258 (3d Cir. 2013); *Jackson*, 2010 WL 322213, at *9, 15 (citing *Burger v. Mays,* 176 F.R.D. 153, 157 (E.D. Pa. 1997) (holding that use of force expert may testify as to whether an officer's actions "were in line with standard police procedures," but prohibiting testimony that the officer's actions were "unreasonable"); *Sargent*, 2015 WL 6447742, at *2 (permitting Dr. McCauley to testify regarding whether defendant followed proper police procedures but refusing to allow testimony as to reasonableness and excessiveness, as such testimony would intrude upon the role of the jury). Here, Dr. McCauley will be permitted to

testify as to his knowledge, experience and extensive law enforcement background, the proper police procedures and whether the Defendants failed to follow same, as well as to the prevailing use of force standards. *Sargent*, 2015 WL 6447742, at *3 ("Indeed, Dr. McCauley's testimony concerning the use of force that would have been authorized in a situation like the one Defendant encountered is, in effect, testifying as to examples of standard police practices, as well as the proper level of force to be used by police in various situations, which is admissible.").

Finally, to the extent Defendants believe that Dr. McCauley has incorrectly identified the appropriate legal standard or that his report is otherwise lacking in his application of that standard to the facts in this case, the Court notes that his opinions remain subject to cross-examination. *See Carnegie Mellon Univ.*, 2012 WL 5451495, at *3 ("A 'party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination.'") (citations omitted). The adversarial system ensures that, through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," expert testimony may be shown wanting. *Daubert*, 509 U.S. at 596. Defendants will have the opportunity to present their own evidence to refute Dr. McCauley's position.

**IV.  CONCLUSION**

The Court has now exercised its gatekeeper duties and finds that Plaintiff's expert, Dr. R. Paul McCauley, Ph.D, FACFE, has met each of the *Daubert* requirements such that his opinions will not be excluded. Specifically, Dr. McCauley is sufficiently qualified and the methodology used in his evaluation and analysis satisfies the reliability requirements of Rule 702 for a non-scientific expert. The Court further finds that, given Dr. McCauley's considerable background and experience in these areas, his opinions, when properly limited, would assist the trier of fact

in evaluating the disputed issues in this case. To that end, if Dr. McCauley is proffered as an expert witness to testify at trial, the Court will limit his testimony as described above.

An appropriate order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: July 10, 2018

cc/ecf: All counsel of record.